IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JUAN A. SANTA CRUZ BACARDÍ;<br>MIREYA SANTA CRUZ BACARDÍ,<br><br>    Plaintiffs,<br><br>         v.<br><br>METRO PAVÍA HOSPITAL, INC., alternatively, UNKNOWN CORPORATION "A", d/b/a HOSPITAL PAVÍA SANTURCE; DR. GASPAR FUENTES MEJÍA, personally and on behalf of his Conjugal Partnership; JOHN DOE 1, 2 and 3, personally and on behalf of their respective Conjugal Partnerships, if applicable; INSURANCE COMPANIES A, B, C, D and E,<br><br>    Defendants. | CIVIL NO.:<br><br>PLAINTIFFS DEMAND<br>TRIAL BY JURY |

**COMPLAINT**

**TO THE HONORABLE COURT:**

Plaintiffs, through her undersigned attorney, respectfully state and pray as follows:

**Jurisdiction and Venue**

1.  The events and omissions giving rise to the claims set forth in this action all occurred within the District of Puerto Rico and the Commonwealth of Puerto Rico.

2.  Federal jurisdiction in this case is attained under diversity pursuant to section 1332 of Title 28, United States Code. Venue is appropriate in this judicial district pursuant to section 1391(b) of Title 28, United States Code.

3.  The matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

-1-

**Parties**

4. Plaintiffs, Mr. Juan Santa Cruz Bacardí ("Mr. Santa Cruz Bacardí") and Mireya Santa Cruz Bacardí (Mrs. Santa Cruz Bacardí) are adult children of Mr. Juan M. Santa Cruz Sigarreta ("Mr. Santa Cruz Sigarreta"), deceased. Mr. Juan Santa Cruz Bacardí and Mrs. Mireya Santa Cruz Bacardí are citizens and residents of the state of Florida.

5. Codefendant Dr. Gaspar Fuentes Mejía (hereinafter also referred to as, "Dr. Fuentes Mejía") is, by information and belief, a doctor in medicine, who on the dates relevant to the present complaint practiced his profession in Puerto Rico, at Hospital Pavía Santurce.

6. Codefendant Metro Pavía Hospital, Inc., alternatively, Unknown Corporation "A", d/b/a Hospital Pavia Santurce (hereinafter also referred to as "Hospital Pavía") is, by information and belief, a corporation organized under the laws of the Commonwealth of Puerto Rico, which has its principal place of business in Puerto Rico and is the owner and/or operator of a hospital known as Hospital Pavia Santurce, in San Juan, Puerto Rico.

7. John Doe 1, 2 and 3, Defendants whose names are unknown, are physicians, nurses or other persons or entities that provided medical treatment to Mr. Santa Cruz Sigarreta at Hospital Pavía Santurce, who incurred in negligent actions or omissions which caused or contributed to the damages claimed herein.

8. Defendants Unknown Insurance Companies A through E, insurers whose identities are presently unknown, insured the aforementioned defendants and are jointly responsible with their respective insureds for the damages claimed herein pursuant to section 2003 of Title 26 of the Annotated Laws of Puerto Rico.

**Factual Allegations**

9. At the time of the incidents that give rise to this complaint, Mr. Juan M. Santa Cruz Sigarreta, deceased father of Plaintiffs, was an active and independent 70 year-old

husband, father and grandfather. Mr. Santa Cruz Sigarreta was a laryngeal cancer survivor (no recurrence), who suffered from angina pectoris (chronic and stable), hypertension, hyperlipidemia, diabetes mellitus and pulmonary fibrosis, conditions for which he received medications and treatment. Mr. Santa Cruz Sigarreta's medical history also included coronary artery disease (CAD) and heart surgery (coronary artery bypass) after a non Q-wave Myocardial Infarction in 2012.

10. On the afternoon of Friday, July 24, 2015, Mr. Santa Cruz Sigarreta went to codefendant Hospital Pavía Santurce's Emergency Room ("ER"), together with his wife, Mrs. Mireya Bacardí González, in order to receive medical treatment for shortness of breath, severe coughing episodes and copious production of phlegm.

11. The physician on duty at Hospital Pavía Santurce's ER, codefendant, Dr. Gaspar Fuentes Mejía, documented the patient's medical history, performed a physical evaluation and ordered laboratory tests, chest radiography and an electrocardiogram (EKG).

12. Importantly, Dr. Fuentes Mejía was informed that Mr. Santa Cruz Sigarreta was a patient of Dr. Máximo Blondet, a neumologist with privileges at Hospital Pavía Santurce, and that despite having been seen by said neumologist earlier that month, his shortness of breath and productive cough had worsened during the prior several weeks.

13. The laboratory data assessed for the patient included CBC, comprehensive metabolic profile, brain natriuretic peptide (BNP) and ABG. The chest radiograph was obtained and solumedrol, tussionex and an atrovent nebulizer treatment were administered. Although the patient's medical record reflects that Dr. Fuentes Mejía had also ordered an EKG, there is no evidence in the medical record that said diagnostic test was conducted.

14. Dr. Fuentes Mejía documented a normal physical examination in the medical

record. Nevertheless, the patient's <u>initial oxygen saturation was 77%</u>, wherein a normal range is between 95% and 100%.

15. Laboratory tests also revealed an alarmingly high <u>BNP level of 749</u>, <u>warranting a "Panic Hi" value</u>, given that a normal range accepts values between 0 and 125. Per the medical record, said panic values, six times higher than normal, were notified to attending nursing personnel at 5:10 pm. BNP is secreted from the heart ventricles in response to changes in pressure that occur when heart failure develops and worsens. The level of BNP in the blood is routinely used to detect and diagnose congestive heart failure.

16. The chest radiography demonstrated prominent central pulmonary vasculature without cephalization. Chronic lung disease findings were also noted. No <u>overt pneumonia</u> or <u>effusions</u> were noted.

17. The arterial blood gas (ABG) test showed a <u>partial oxygen pressure ($PO_2$) of 69 mmHg</u>, at 4:14 pm, indicating that the patient was suffering hypoxemia, which is an abnormal decrease of oxygen in the blood.

18. Notwithstanding the alarming BNP panic value, the very low and decreasing blood oxygenation, and the patient's history of heart disease, Mr. Santa Cruz Sigarreta was discharged home at 7:10 pm from Hospital Pavía Santurce's ER, with a diagnosis of bronchial asthma, for which he was prescribed medications.

19. While at home during the weekend, Mr. Santa Cruz Sigarreta remained in bed, with worsening shortness of breath, continued coughing with phlegm, dizziness, and a felling of "pressure" in his chest.

20. On the morning of July 27, 2015, Mr. Santa Cruz Sigarreta became increasingly ill and was taken by ambulance to Hospital HIMA San Pablo Fajardo (hereinafter, "HIMA Fajardo"). He arrived at HIMA Fajardo's ER suffering from recurrent dyspnea,

a non-ST elevation myocardial infarction (Non-STEMI) with positive troponin levels, congestive heart failure (CHF), acute renal insufficiency and metabolic acidosis. The patient was admitted at 4:43 pm with a principal diagnosis of pneumonia and acute myocardial infarction Non-STEMI. While at HIMA Fajado the patient developed hypotension and respiratory failure.

21. On August 6, 2015, the patient was transferred by air ambulance from HIMA Fajardo to Centro Cardiovascular de Puerto Rico y del Caribe (hereinafter, "Centro Cardiovascular"). Once there, Mr. Santa Cruz Sigarreta underwent a cardiac catheterization that showed patent graphs, a 95% posterior descending artery occlusion, an 80% circumflex stenosis and a 95% first diagonal stenosis. The patient also suffered pneumonia and septic shock with renal failure.

22. At Centro Cardiovascular Mr. Santa Cruz Sigarreta required endotracheal intubation and pressor support to maintain blood pressure and cardiac output, however, despite IV antibiotics, aggressive ICU care and maximal support the patient unfortunately passed on August 14, 2015.

23. The documented <u>immediate cause of death</u> at Centro Cardiovascular was septic shock and the documented <u>basic cause of death</u> was myocardial infarction.

24. Mr. Juan Santa Cruz Sigarreta's death was premature and entirely avoidable considering the symptoms and conditions he presented and the established medical protocols and means for their execution available to his treating physician at Hospital Pavía Santurce.

25. The failure of codefendant, Dr. Gaspar Fuentes Mejía, to follow the standard of medical care resulted in a delayed diagnosis of congestive heart failure, myocardial infarction, pneumonia and sepsis. An admission to a tertiary care hospital, such as Hospital Pavía Santurce, would have greatly increased the patient's opportunity of

surviving the acute cardiopulmonary crisis he was evidently suffering upon presentation at Hospital Pavía Santurce's ER on July 24, 2015.

26.     Sadly, Mr. Santa Cruz <u>walked</u> into Pavia Hospital where he was misdiagnosed by the attending emergency physician and discharged without addressing laboratory findings and without providing an appropriate evaluation and treatment that required admission, inpatient cardiopulmonary assessment and treatment.

27.     Two and a half (2 ½) days after the lapses in the standards of care at Hospital Pavía Santurce, Mr. Santa Cruz Sigarreta's condition had deteriorated to the point that the patient who initially was able to walk into said hospital's ER, now was critically ill and required emergency ambulance transport to Hospital HIMA San Pablo Fajardo.

28.     Because of the negligence in the medical care and treatment provided to the patient at Hospital Pavía Santurce, upon admission to HIMA Fajardo Mr. Santa Cruz Sigarreta had become critically ill to the degree that he now had multiple preventable life threatening processes that ultimately culminated in his untimely death.

29.     More specifically, the codefendants' deviations from the medical standards and/or professional negligence include, but are not limited to: failure to obtain an EKG in a patient with elevated BNP, unexplained dyspnea and a history of known coronary artery disease; failure to address the elevated brain natriuretic peptide (BNP) level that was a panic value; failure to recognize that the patient had congestive heart failure on July 24, 2015 and that this was a new diagnosis for the patient; failure to address the initial oxygen saturation of 77 percent; failure to address a partial oxygen pressure ($PO_2$) of 69 mmHg, indicating that the patient was suffering hypoxemia; failure by the attending physician to consult internal medicine, neumology and cardiology departments; failure to measure the patient's serum troponin level to assess for acute myocardial infarction; failure to admit the patient to a tertiary center for a presumptive acute cardiac event

and/or pulmonary infection on July 24, 2015; failure to administer aspirin for a presumptive cardiac event; applying the diagnosis of bronchial asthma in the absence of supporting information to substantiate this diagnosis; failure to perform a differential diagnosis; failure to perform necessary diagnostic exams and tests to a high risk patient for cardiac conditions that presents difficulty in breathing; failure to create an adequate medical record for an Emergency Room patient.

30. As a consequence of codefendants' negligence Mr. Santa Cruz Sigarreta experienced severe physical pain and suffering, emotional stress and mental anguish during the twenty one (21) days he remained hospitalized prior to his death.

31. Plaintiffs Mr. Juan Santa Cruz Bacardí and Mrs. Mireya Santa Cruz Bacardí arrived to Puerto Rico from Florida, one (1) and four (4) days, respectively, after their father's hospitalization at HIMA Fajardo of July 27, 2015.

32. Both Plaintiffs remained at all possible times next to their father during the torturous weeks he spent hospitalized before passing away, and were consumed by preoccupation and anguish as they saw and perceived their father's own pain, suffering and anxiety as he labored to breath and struggled to survive.

33. Prior to the events outlined above, Mr. Juan Santa Cruz Sigarreta led an active and happy live, traveling, spending time with his wife, children and grandchildren, and looked forward to continued joyful experiences during his Golden Years with family and friends.

34. As a result of the foregoing incidents, Mr. Santa Cruz Sigarreta unnecessarily endured severe physical and emotional pain and suffering, which was entirely avoidable given his known conditions and the established medical standards, protocols and means available to Dr. Fuentes Mejía and Hospital Pavía Santurce on July 24, 2015. Ultimately, as a result of the negligence of defendants, Mr. Santa Cruz Sigarreta prematurely lost his

life.

35. His family, including his son, Plaintiff Mr. Juan Santa Cruz Bacardí, and his daughter, Plaintiff Mrs. Mireya Santa Cruz Bacardí, helplessly witnessed Mr. Santa Cruz Sigarreta's rapid deterioration and eventual demise. Plaintiffs have lost their father, an irreplaceable part of their life. This loss has caused great emotional damage to Plaintiffs, which continues to this day. As a consequence of the foregoing, the family, social and psychological life of Plaintiffs has been severely altered, having been deprived of the love, support, advice, care, company, and attention of their father, Mr. Santa Cruz Sigarreta.

36. Mr. Santa Cruz Sigarreta's physical and emotional damages, including his physical and mental pain, anguish and suffering prior to his death, caused by Defendants' negligence while at Hospital Pavía Santurce, are valued at a sum of no less than $1,000,000.00.

37. As heirs to Mr. Santa Cruz Sigarreta, Plaintiffs, his son Mr. Juan Santa Cruz Bacardí, and his daughter, Mrs. Mireya Santa Cruz Bacardí, claim, on behalf of the community of heirs, the physical and emotional damages suffered by their father.

38. Plaintiffs Mr. Juan Santa Cruz Bacardí and Mrs. Mireya Santa Cruz Bacardí, have individually suffered and will continue to suffer grave emotional damages and mental anguish due to the unnecessary and premature loss of their father. Said damages are valued at a sum of no less than $500,000.00, for each.

39. The codefendants are severally liable for the negligent acts and damages described in the present complaint.

## COUNT I

**(Medical Malpractice, Vicarious Liability - 31 L.P.R.A. § 5141; 5142)**

40. Paragraphs 1 through 39 of this Complaint are incorporated by reference as if

fully set forth herein.

41. Defendants Metro Pavía Hospital, Inc., alternatively, Unknown Corporation "A" d/b/a Hospital Pavía Santurce, Dr. Gaspar Fuentes Mejía, and John Doe 1, 2 and 3, had a duty to provide medical care to Mr. Santa Cruz Sigarreta that complied with the applicable standards of the medical profession. Notwithstanding, Metro Pavía Hospital, Inc., alternatively, Unknown Corporation "A" d/b/a Hospital Pavía Santurce, Dr. Gaspar Fuentes Mejía, and John Doe Defendants 1, 2 and 3, breached that duty as set forth above.

42. Metro Pavía Hospital, Inc., alternatively, Unknown Corporation "A" d/b/a Hospital Pavía Santurce is further vicariously liable for the negligent acts and/or omissions incurred by its medical and nursing staff that intervened with Mr. Santa Cruz Sigarreta, as well as for its own negligence in the selection, monitoring, supervision and granting of privileges to said doctors and nurses, including codefendants Dr. Gaspar Fuentes Mejía, and John Doe Defendants 1, 2 and 3.

43. There is a clear and direct causal link between the medical malpractice and/or negligence of Metro Pavía Hospital, Inc., alternatively, Unknown Corporation "A" d/b/a Hospital Pavía Santurce, Dr. Gaspar Fuentes Mejía, and John Doe Defendants 1, 2 and 3 and the damages sustained by Plaintiffs, as set forth above.

## COUNT II

### (Direct Action Against Insurers - 26 L.P.R.A. § 2003)

44. Paragraphs 1 through 43 of this Complaint are incorporated by reference as if fully set forth herein.

45. Defendants Unknown Insurance Companies A through E have a contractual obligation to compensate those who are damaged by the medical errors and omissions of defendants Metro Pavía Hospital, Inc., alternatively, Unknown Corporation "A" d/b/a

Hospital Pavía Santurce, Dr. Gaspar Fuentes Mejía, and John Doe Defendants 1, 2 and 3. As set forth in Count I, above, these defendants committed medical malpractice and/or negligence with respect to Mr. Santa Cruz Sigarreta. Moreover, there is a clear and direct causal link between their misconduct and the damages sustained by Plaintiffs, as set forth above.

46. Under 26 L.P.R.A. § 2003, Plaintiffs have a right to reclaim directly against the corresponding insurers of defendants Metro Pavía Hospital, Inc., alternatively, Unknown Corporation "A" d/b/a Hospital Pavía Santurce, Dr. Gaspar Fuentes Mejía, and John Doe Defendants 1, 2 and 3.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully requests that the Court enter final judgment against Defendants:

1. Declaring Defendants to be in violation of 32 L.P.R.A. § 5141, 5142 and 26 L.P.R.A. § 2003, as alleged hereinabove.

2. Finding Defendants jointly and severally liable to Plaintiffs for the non-economic damages sustained by Plaintiffs, in an amount not less than $500,000.00, for each; and for Plaintiffs' inherited cause of action, in an amount not less than $1,000,000.00, plus applicable interest and costs.

3. Awarding Plaintiffs such other and further relief at law or in equity as this Court may deem just and proper.

### JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues triable of right by a jury in the complaint set forth above.

In San Juan, Puerto Rico, this 7th day of August, 2016.

**RESPECTFULLY SUBMITTED.**

              s/<u>Hatuey Infante Castellanos</u>
              HATUEY INFANTE CASTELLANOS
              USDC-PR 225713
              **HATUEY INFANTE LAW OFFICES, P.S.C.**
              Attorneys for Plaintiffs
              P.O. Box 12014
              San Juan, PR 00914
              Tel: (787) 399-2238
              Fax:(787) 641-5016
              hatueyinfante@gmail.com