# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

JUAN A. SANTA CRUZ-BACARDI, et
al.

     Plaintiffs

        vs.

METRO PAVIA HOSPITAL, INC, et al.

     Defendants

CIVIL NO: 16-02455
(RAM)

## OPINION AND ORDER

Pending before the Court is codefendant Dr. Maximo Blondet Passalacqua's "Motion in Limine To Preclude Plaintiffs Expert, Dr. Ian W. Cummins From Testifying That Dr. Maximo Blondet Passalaqua Is Liable to Plaintiffs Pursuant to Daubert And Kumho Federal Rule 26(A)(2)(B) Standards and Puerto Rico Jurisprudence." (Docket No. 64.)[1] After considering said *Motion,* "Plaintiffs' Response in Opposition to Codefendant Dr. Máximo Blondet Passalacqua's Motion in Limine" ("Response in Opposition") (Docket No. 74) and after reviewing the applicable law, the Court **GRANTS in part and DENIES in part** Defendant's *Motion in Limine* at Docket No. 64.

Dr. Cummings' supplemental report and expected testimony as to Dr. Maximo Blondet Passalacqua are inadmissible and excluded

---

[1] Dr. Ian W. Cummings' name is misspelled as "Cummins" in both the *Motion in Limine* at Docket No. 64 and in Dr. Blondet's *Reply to Plaintiffs Response in Opposition to Codefendant Maximo Blondet Passalaqua's Motion in Limine* ("Reply to Plaintiff's Opposition") at Docket No. 80. (See Docket No. 64 and 80).

from the record. The claims against Dr. Blondet are not dismissed at this time.

## I.  BACKGROUND

On August 7, 2016, Plaintiffs Mr. Juan Santa Cruz Bacardí and Mrs. Mireya Santa Cruz Bacardí sued Dr. Gaspar Fuentes Mejía ("Dr. Fuentes") and Metro Pavía Hospital, Inc. d/b/a/ Hospital Pavia Santurce alleging medical malpractice which led to the death of their father, Mr. Juan Santa Cruz Sigarreta ("Mr. Santa Cruz Sigarreta").[2] (Docket No. 1 at 5-6). Dr. Maximo Blondet Passalacqua ("Dr. Blondet") was included as a Defendant in the *Second Amended Complaint* filed on August 11, 2017. (Docket No. 27). Defendants Dr. Fuentes and Hospital Pavia Santurce answered the Complaint denying the allegations. (Docket Nos. 12 and 13).[3] On November 4, 2017, Dr. Blondet filed an answer denying all allegations. (Docket No. 40). In his *Motion in Limine*, Dr. Blondet asks the Court that: (1) Dr. Ian W. Cummings not be allowed to testify as to him at trial, and (2) the Court dismiss with prejudice Plaintiffs' claims against him.

## II.  LEGAL STANDARD

---

[2] The Court notes that Plaintiffs filed a "Motion for Partial Voluntary Dismissal, with Prejudice, due to Settlement," requesting that the Court issue a partial judgement due to voluntary dismissal, with prejudice, in favor of Defendant Metro Santurce, Inc., d/b/a Hospital Pavía Santurce. (Docket No. 52) The *Motion for Voluntary Dismissal* was GRANTED pursuant to Docket No. 53.

## A. *Daubert* Standard

In <u>Daubert v. Merrell Dow Pharms, Inc.</u>, the Supreme Court of the United States explained that a trial judge serves a gate-keeper who guarantees that an expert's testimony "rests on a reliable foundation and is relevant to the task at hand." <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579, 597 (1993); *see also* <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 147-49 (1999) (holding that *Daubert* applies to all expert testimony).

The admission of expert testimony is governed by Rule 702 of the Federal Rules of Evidence which reads as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise if:
> (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (2) the testimony is based upon sufficient facts or data,
> (3) the testimony is the product of reliable principles and methods, and
> (4) the witness has applied the principles and methods reliably to the facts of the case.

Moreover, if a witness is relying mainly on experience, he must provide more information for the Court to determine the reliability of his testimony. The First Circuit Court of Appeals ("First Circuit") has been adamant that "[a]s long as an expert's scientific testimony rests upon good grounds, based on what is known, it should be tested by the adversary process-competing expert testimony and active cross-examination-rather than excluded

from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies." Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 80, 85 (1st Cir. 1998) (internal quotation marks and citations omitted). As another Judge in this District put it, "[p]roponents ... do not have to demonstrate that the assessments of their experts are correct, only that their opinions are reliable." Rivera v. Centro Medico del Turabo, Inc., 2017 WL 4122607, at *3 (D.P.R. 2017) (quoting Rivera-Cruz v. Latimer, Biaggi, Rachid & Godreau, LLP, 2008 WL 2446331, at *2 (D.P.R. 2008)).

To testify as an expert, a medical doctor need not be a specialist within the field which he is to testify about. *See, e.g.*, Gaydar v. Sociedad Instituto Gineco-Quirurgico y Planificacion, 345 F.3d 15, 24 (1st Cir. 2003). ("The proffered expert physician need not be a specialist in a particular medical discipline to render expert testimony relating to that discipline."); *See also* Mitchell v. United States, 141 F.3d 8 (1st Cir. 1998)(an internist with specialties in hematology and oncology, could testify as to physicians' treatment of colonoscopy patient in wrongful death suit, even though he was not a specialist in gastroenterology). The First Circuit has also clarified that board certifications do not always correlate with an expert's testimony being admitted into evidence. *See e.g.*, Pages-Ramirez v. Ramirez-Gonzalez, 605 F.3d 109, 113-14 (1st Cir. 2010). Rather,

allowing its exclusion in that scenario would lead to an abuse of discretion by the lower court. *See* <u>Gaydar</u>, 345 F.3d at 24-25 (internal citations omitted).

### B. FED R. CIV. P. 26(a)(2)(B)

Apart from conforming to Fed. R. Evid. 702, expert witness testimony must also conform to Rule 26 of the Federal Rules of Civil Procedure. This Rule compels parties to disclose any witness they can expect to use at trial under Fed. R. Evid. 702. Per Subsection (2)(B) of Fed. R. Civ. P. 26, this also applies to witnesses' written reports. Said section reads as follows:

> **(2)** *Disclosure of Expert Testimony.*
> . . .
> **(B)** *Witnesses Who Must Provide a Written Report.* Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report--prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:
> > **(i)** a complete statement of all opinions the witness will express and the basis and reasons for them;
> > **(ii)** the facts or data considered by the witness in forming them;
> > **(iii)** any exhibits that will be used to summarize or support them;
> > **(iv)** the witness's qualifications, including a list of all publications authored in the previous 10 years;
> > **(v)** a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> > **(vi)** a statement of the compensation to be paid for the study and testimony in the case.

Fed.R.Civ.P. 26(a)(2)(B). Failure to comply with Fed. R. Civ. P. 26 may preclude a party from utilizing the witness or expert testimony at a hearing, on a motion or at trial. It may even imply sanctions against the offending party pursuant to Fed. R. Civ. P. 37(c)(1). This occurs "unless the failure was substantially justified or is harmless." Gay v. Stonebridge Life Ins. Co., 660 F.3d 58, 62 (1st Cir. 2011).

In medical malpractice suits, the plaintiff must submit an expert report including "all of the opinions that the expert will express at trial and the reasons for them." Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 77 (1st Cir. 2009); see also Gonzalez Rivera v. Hospital HIMA-Caguas, 2018 WL 4676925, at *3 (D.P.R. 2018). It must be a "'detailed and complete' [report]. ... [And] include the substance of the testimony ... expected to give on direct examination." Salgado by Salgado v. General Motors Corp., 150 F.3d 735, 741 n. 6 (D.P.R. 1998) (internal citations omitted).

## C. Standard of Care and Medical Malpractice in Puerto Rico

In medical malpractice cases in Puerto Rico, a plaintiff must assert three main elements: "(1) the duty owed (i.e., the minimum standard of professional knowledge and skill required in the relevant circumstances); (2) an act or omission transgressing that duty; and (3) a sufficient causal nexus between the breach and the harm." Laureano Quinones v. Nadal Carrion, 2018 WL 4057264, at *2-3 (D.P.R. 2018) (quoting Marcano Rivera v. Turabo Medical Ctr.

P'ship, 415 F.3d 162, 167 (1st Cir. 2005)). The standard of care imposed on doctors is based on a national standard. Rojas-Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico, 394 F.3d 40, 43 (1st Cir. 2005). Puerto Rico courts define the national standard of care owed to patients as "[t]hat [level of care] which, recognizing the modern means of communication and education, ... meets the professional requirements generally acknowledged by the medical profession." Marcano Rivera v. Turabo Med. Ctr. P'ship, 415 F.3d 162, 167-68 (1st Cir. 2005) (quoting Oliveros v. Abreu, 101 P.R. Dec. 209, 266 (1973)).

In Puerto Rico "a health-care provider 'is presumed to have exercised reasonable care in the discharge of his functions.'" Lopez-Rivera v. Hosp. Auxilio Mutuo, Inc., 290 F. Supp. 3d 137, 142 (D.P.R. 2017) (quoting Lopez-Rivera, 247 F.Supp.3d 185, 186 (D.P.R. 2017)). Hence, plaintiffs bear the burden of refuting that presumption of abiding by the national standard care. To refute the presumption, plaintiffs typically use expert testimony as case law states that it will aid in determining causation and a standard of care. See Rolon-Alvarado v. Municipality of San Juan, 1 F.3d 74, 78 (1st Cir. 1993) ("Because medical knowledge and training are critical to demonstrating the parameters of a physician's duty, the minimum standard of acceptable care […] must ordinarily be established by expert testimony.")

III.  **ANALYSIS**

Among other things, Dr. Blondet's *Motion in Limine* argues that: (1) Dr. Cummings' testimony is unreliable because he lacks experience in the field of internal medicine; (2) the report lacks references to medical literature, and (3) his testimony just includes his "conclusory statements" which are insufficient to prove Dr. Blondet's negligence. All but the first of the foregoing arguments pass muster.

The Court begins by addressing Dr. Blondet's argument that Dr. Cummings' testimony is unreliable because he is not a pulmonologist. Dr. Blondet highlights that Dr. Cummings has practiced Emergency Medicine for the past twenty-five (25) years and took the board examinations for Internal Medicine in 1988. (Docket No. 64 at 17). This argument is meritless. The First Circuit has made clear that a "proffered expert physician need not be a specialist in a particular medical discipline to render expert testimony relating to that discipline.") Gaydar, 345 F.3d at 24. While Dr. Cummings is qualified as a medical expert to opine on Dr. Blondet, Dr. Fuentes and Hospital Pavia Santurce's role in the death of Mr. Santa Cruz Sigaretta, the supplemental report still fails to comply with Fed. R. Evid. 702 and Fed. R. Civ. P. 26.

The Court turns to Dr. Blondet's argument that Dr. Cummings' report "is totally devoid of medical literature to support his opinions." (Docket No. 64 at 30). In their *Response in Opposition*, Plaintiffs state that Dr. Blondet's attorneys admitted during Dr.

Cummings' deposition that Dr. Cummings did reference medical literature in his report. (Docket No. 82-2 at 60-61). For example, Dr. Blondet's *Motion in Limine* stated that Dr. Cummings cites an article addressing NT BNP, a blood exam relating to cardiac conditions and not pulmonary conditions. (Docket No. 64 at 17-19, 29). A thorough reading of the report demonstrates that Dr. Cummings did cite articles such as these, alongside tables provided by Hospital Pavia Santurce related to how NT BNP levels are calculated, to demonstrate why the deceased's symptoms warranted more cardiopulmonary evaluation. (Docket No. 64-4 at 8). Additionally, Dr. Cummings report does cite another source: a medical journal article titled "Prevalence of negative chest radiography results in the emergency department patient with decompensated heart failure" (Ann Emerg Med. 2006 Jan;47(1):13-8. Epub 2005 Jun 20). (Docket No. 64-4 at 9).

The fact that Dr. Cummings' report cites two items of medical literature does not mean it meets Fed. R. Evid. 702's requirements as to Dr. Blondet. Dr. Cummings' report fails to tie the articles he mentions to Dr. Blondet's actions or omissions and fails to explain how they serve to establish that Dr. Blondet provided negligent care to Mr. Santa Cruz Sigarreta. See e.g., Baker v. Chevron USA, 680 F. Supp. 865, 878 (S.D. Ohio 2010) (concluding that an expert report was inadequate because expert witness made no effort to connect the medical literature to expert's opinions).

Thus, While Dr. Cummings' report included medical literature and, on the surface, seems to rest upon "good grounds," the medical literature cited does not assist in the "trier of fact to … determine a fact in issue." The First Circuit is clear when it states that "[e]xpert testimony that consists of legal conclusions cannot properly assist the trier of fact." Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 100 (1st Cir. 1997) (internal quotations omitted). Moreover, the United States Supreme Court has stated that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.". Smith v. Jenkins, 732 F. 3d 51 (1st Cir. 2013) (quoting General Elec. Co. v. Joiner*,* 522 U.S. 136, 146 (1997) (internal quotations omitted). On the contrary, a trial court can "conclude that there is simply too great an analytical gap between the data and the opinion proffered." Hendrix ex rel. G.P. v. Evenflo Co., 609 F.3d 1183, 1194 (11th Cir. 2010) (quoting General Elec. Co.*,* 522 U.S. at 146). Here, that analytical gap is evident.

Similarly, to prevail in the case, Plaintiffs bear the burden of establishing: (1) the duty that Dr. Blondet owed to the deceased; (2) an act or omission on his part disobeying that duty; and (3) a sufficient causal nexus between the breach and the harm. Dr. Blondet's *Motion in Limine* states that Dr. Cummings' testimony does not produce "a single valid medical standard to support the

alleged failures by Dr. Blondet. His statements are just his own unsupported thoughts." (Docket No. 64 at 30). As support, Dr. Blondet cites <u>Rolon-Alvarado v. Municipality of San Juan</u>, which states that "[p]rofessional standards require normative judgments, not merely proof that a better way to treat a particular patient could have been devised." <u>Rolon-Alvarado</u>, 1 F.3d at 78. To wit, the Advisory Committee Notes as to Fed. R. Evid. 702 explain that if "the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." **Here, Dr. Cummings' report clearly fails to establish how he reached the conclusions he did regarding standards of care.**

In their *Response in Opposition*, Plaintiffs posit that Dr. Cummings did elaborate on the deviations of standard of care in his testimony. Plaintiffs cite multiple pages of Dr. Cummings' testimony where he allegedly explained the standard of care related to the abandonment of patients, which they believe Dr. Blondet did. (Docket No. 74 at 15-20 and Docket 82-2 at 101-106, 130). Plaintiffs also contend in their *Sur Reply* that Dr. Blondet ignores their arguments about the standard of care in his *Reply to Plaintiff's Opposition*. (Docket No. 84 at 3).

While the First Circuit and the District Court case law support the finding that a doctor testifying as an expert witness

may sometimes imply a standard of care in their testimony without articulating the "magic words", this is not the case at hand. *See* Cortes-Irizarry v. Corporacion Insular De Seguros, 111 F.3d 184, 190 (1st Cir. 1997) (holding that references to a "prevailing medical standard" used by the "average gynecologist" was sufficient to establish a standard of care). In this case, no such statements were made in Dr. Cummings' testimony which would lead the Court to a similar conclusion. The closest Dr. Cummings' report arrives at delineating a national standard is when he explains in his deposition what "most pulmonologists" or "good pulmonologists" do when caring for patients, but he still fails to articulate a general medical standard of care, let alone a national one. (Docket No. 82-2 at 143-44). Dr. Cummings' experiences alone are therefore inadequate to demonstrate a standard of care. See e.g., Hendrix ex rel. G.P., 609 F.3d at 1201 ("Hendrix attempts to sidestep the deficiencies in the medical literature by focusing on Dr. Hoffman's experience and training. Merely demonstrating that an expert has experience, however, does not automatically render every opinion and statement by that expert reliable.")

     Further, experts must prove that a standard of care is nationally used, rather than simply explaining a standard as based on their experience. They can do so by referencing "a published standard, [discussion] of the described course of treatment with practitioners outside the District ... at seminars or conventions,

or through presentation of relevant data." <u>Strickland v. Pinder</u>, 899 A.2d 770, 773–74 (D.C. 2006) (internal citations omitted)); *see also* <u>Vargas-Alicea v. Continental Casualty Company</u>, 2019 WL 1453070, at *2 (D.P.R. 2019) ("Dr. Benabe's report is silent on these parameters. And while his report mentions publications in a footnote, it does not relate the content of those publications to whether the relevant course of treatment is followed nationally as required by law."); <u>Porter v. McHugh</u>, 850 F. Supp. 2d 264, 268 (D.D.C. 2012)(quoting <u>Strickland</u>, 899 A.2d at 774)("Where the expert makes 'no attempt to link his testimony to any certification process, current literature, conference or discussion with other knowledgeable professionals,' there is no "basis for his discussion of the national standard of care.")

Dr. Cummings' report, as stated earlier, does include some medical literature, but it fails to link that literature to a nationally-recognized standard of care which Dr. Blondet allegedly violated. Thus, simply citing sources is insufficient. *See, e.g.*, <u>Conn v. United States</u>, 880 F. Supp. 2d 741, 747 (S.D. Miss. 2012)("Even if Dr. Strong had not failed to identify a specific Guidelines publication, and … not failed to identify a specific suggestion […], he still would have failed to state that the conduct […] [which] marked the standard of care of a minimally competent physician.")

Finally, Plaintiffs cite the District Court case <u>Casillas-Sanchez v. Ryder Memorial Hospital, Inc.</u> to demonstrate that the fact that an expert did not include medical literature is insufficient to warrant exclusion of the expert's report and that an expert did testify as to a standard of care. <u>See Casillas-Sanchez v. Ryder Mem'l Hosp., Inc.</u>, 14 F. Supp. 3d 22, 26 n. 5 (D.P.R. 2014) (The fact that the expert failed to "mention or produce 'any single piece of specific medical literature in order to establish the alleged standard of care,' […,] is utterly insignificant. Federal Rules of Evidence 705 and 703 do not require [that].") However, like another recent District Court case, here too, Plaintiffs' reliance on <u>Casillas-Sanchez</u> is misplaced. *See* <u>Vargas-Alicea</u>, 2019 WL 1453070, at *4 n.8. <u>Casillas-Sanchez</u> did not address if an expert presented a national standard. Here, as in <u>Vargas-Alicea</u>, that is the gist of the both Plaintiffs and Defendants arguments and goes to the heart of whether Dr. Cummings' report is reliable. Dr. Cummings failed to include a "standard of care", national or otherwise, in his testimony. His report therefore fails to meet the standards set forth by Fed. R. Evid. 702 and Rule Fed. R. Civ. P. 26 and should be excluded.

Dr. Blondet requested that the Court dismiss the claim against him "with prejudice for lack of evidence to establish allegations of negligence against him" if the *Motion in Limine* was granted. (Docket No.64 at 31). The Court denies this request. As Plaintiffs

correctly pointed out, Dr. Blondet's *Motion in Limine* fails to meet the requirements of motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. (Docket No.74 at 22-23). And "[a] motion in limine is not the appropriate tool to move for judgment on a particular claim." Torres-Rivera v. Centro Medico Del Turabo Inc., 215 F. Supp. 3d 202, 207 (D.P.R. 2016).

### IV.  CONCLUSION

For the reasons stated above, Defendant's *Motion in Limine* at Docket No. 74 is **GRANTED in part** and **DENIED in part**. Dr. Cummings' supplemental report and expected testimony as to Dr. Blondet are inadmissible and excluded from the record. The claims against Dr. Blondet are not dismissed at this time.

**IT IS SO ORDERED.**

In San Juan Puerto Rico, this 26th day of July 2019.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge